(December 19, 1891.)

WRIGHT v. WESTHEIMER ET AL.

[28 Pac. 430.]

LEVY OF SECOND WRIT OF ATTACHMENT—EFFECT ON FIRST LEVY.—The issuance and levy of the second writ of attachment on the same property, not an abandonment of the first levy, under the peculiar circumstances of this case.

SECTION 3071 OF THE REVISED STATUTES OF IDAHO CONSTRUED—ATTACHMENT LEVIED PRIOR TO FILING OF DECLARATION OF HOMESTEAD HELD GOOD.—Wright sold and conveyed his homestead, and with a part of the proceeds of such sale purchased another residence, intending it for a homestead. W. & Sons levied an attachment upon the residence so purchased, before W. filed his homestead declaration therefor. Held, that the purchase of a new homestead with the proceeds of the sale of an old homestead does not exempt

such new homestead from attachment or execution, levied prior to filing the homestead declaration for record, as required by section 3071 of the Revised Statutes of Idaho.

(Syllabus by the court.)

APPEAL from District Court, Bingham County.

Hawley & Reeves and M. G. Cage, for Appellant.

A new homestead which has been purchased with the proceeds of the sale of the old homestead is exempt in all cases where the old one would have been. (*Sargent v. Chubbuck,* 19 Iowa, 37; *Cowgell v. Warrington,* 66 Iowa, 666, 24 N. W. 266; *Lamb v. McConkey,* 76 Iowa, 47, 40 N. W. 77; *Whitt v. Kendall,* 11 Ky. Law Rep. 116, 11 S. W. 592; *Maynard v. May,* 11 Ky. Law Rep. 166, 11 S. W. 806; *Bailey v. Steve,* 70 Wis. 316, 35 N. W. 735; Smyth on Homesteads, sec. 194.) The property in controversy having been bought with money received from the sale of the old home, homestead rights had attached, and hence the premises were exempt. (*Cowgell v. Warrington,* 66 Iowa, 666, 24 N. W. 266; *Bailey v. Steve,* 70 Wis. 316, 35 N. W. 735; *Jewell v. Clark,* 78 Ky. 398; *Jones v. Brandt,* 59 Iowa, 332, 10 N. W. 854, 13 N. W. 310; *Furman v. Dewell,* 35 Iowa, 170; Smyth on Homesteads, sec. 194.) Changing a writ, or issuing a new one, which amounts to a change, is an abandonment of the first one. (*Gile v. Devens,* 11 Cush. 59.) Amendments made after levy will not retroactively make the writ good in relation to other writs of attachment, all against the same property. (Waples on Attachments, 139, 140; *Danielson v. Andrews,* 1 Pick. 156; *Putnam v. Hall,* 3 Pick. 445, and cases cited; *Denny v. Ward,* 3 Pick. 199; *Ohio Life Ins. etc. Co. v. Urbana Ins. Co.,* 13 Ohio, 220.) Where a writ is amended between levy and judgment, its amendment cannot have retroactive effect so as to make an attachment lien outrank a mortgage given by defendant before amendment, and, *a fortiori,* homestead. (*Drew v. Bank,* 55 Me. 450; Drake on Attachments, sec. 217.)

T. M. Stewart, for Respondents.

The provisions of the homestead law are mandatory. (*Ashley v. Olmstead,* 54 Cal. 616; *Ames v. Eldred,* 55 Cal. 136;

*Smith v. Richards,* 2 Idaho, 498, 21 Pac. 419.)   The proceeds of a voluntary sale of exempt property lose exemptions. (Freeman on Executions, 717; *Lane v. Richardson,* 104 N. C. 642, 10 S. E. 189; *Kirby v. Giddings,* 75 Tex. 679, 13 S. W. 27; Thompson on Homesteads and Exemptions, sec. 750; *Whittenberg v. Lloyd,* 49 Tex. 642; *Schneider v. Bray,* 59 Tex. 670; *Mann v. Kelsey,* 71 Tex. 609, 10 Am. St. Rep. 800, 12 S. W. 43.)

SULLIVAN, C. J.—This is an action brought by the appellant for the purpose of quieting title to and removing cloud from the title of certain town lots in the town of Blackfoot, Bingham county. The complaint alleges that the respondents (the defendants in the court below) commenced an action in the district court of Bingham county, Idaho, against this appellant, on the twenty-first day of November, 1890, to obtain judgment against appellant on a certain contract theretofore executed by the appellant, and on said twenty-first day of November caused a writ of attachment to issue out of said court in said cause, and placed the same in the hands of the sheriff of said Bingham county for service; that on said date the sheriff levied said writ of attachment upon lots 12, 13, 14, 15, 16, 17, and 18, in block 55, in the town of Blackfoot, said county; that on the second day of December, 1890, said defendants abandoned said levy under said writ, and caused another writ of attachment to issue in said action, and that no affidavit or undertaking was made or given before the issuance of said last-mentioned writ; that said writ was irregularly issued and void; that said writ was levied by the said sheriff on the lots above described; thereafter the sheriff made his return thereon to the court, and also to the recorder of said Bingham county; and that each of the returns, so made by the sheriff, is a part of the records of said county, and appear on said records to be regular on their face; and that said returns and records cast a cloud on the title of the plaintiff. The complaint further alleges that plaintiff is a married man, and the head of a family; that his family resides with him upon said lots as their home, and that he has no other residence or home; that on said twenty-first day of November, and at all times

since said date, the said lots, and the dwelling-house thereon situated, were and are exempt from the claim of defendants; that said property was the homestead of plaintiff, and was not subject to the payment of his debts; and prays that his title to said property be quieted, and that the cloud cast thereon by the levy and return of said writs be removed. The answer specifically denies all of the allegations of the complaint, except the copartnership of plaintiffs; the bringing of the suit mentioned; the issuance, levy and return of the writ of attachment; and avers that, as appellant had come "into more open and notorious assertion of rights and ownership in and to said real estate, the respondents caused a second writ of attachment to issue," and to be levied upon said real estate; and avers that on the thirty-first day of January, 1891, respondents obtained judgment against the plaintiff for $359.19 damages, and costs taxed at nineteen dollars and sixty-five cents, in the action in which said writs of attachment were issued, and claim a lien therefor on said lots and premises. The cause was tried by the court without a jury, and judgment rendered dismissing the action, with costs against the plaintiff. Thereupon a motion for a new trial was interposed, and overruled by the court. From the order overruling said motion the case is brought to this court.

The first error specified by the appellant is that the court erred in holding that the writ of attachment issued in the suit of respondents against appellant, and levied upon the real estate and premises above described, was valid, and created a lien on said premises. This specification of error does not specify which of said writs of attachment is referred to, but, as the record shows that the court below held that the levy of the first writ created a valid lien upon said premises, we presume that that is the writ referred to. We will, however, determine whether said objection or specification of error is fatal to either writ. The appellant alleges in the complaint that the levy of the first writ was abandoned by reason of the issuance of the second writ, and levying it upon the identical property on which the first writ was levied, and that the second writ was invalid by reason of respondents having failed to file an affidavit and undertaking prior to the issuance there-

of. The objection to the last writ is, however, not urged in this court. The respondents, by their answer, deny the abandonment of the levy of the first writ, and state in their answer the reason for procuring the issuance of the second writ as follows: "The said plaintiff having at that time come into more open and notorious assertion of rights and ownership in the said real estate, the defendants herein caused a new writ to issue, as provided by law, and procured the same to be levied on all the interest the said D. D. Wright then had in said real estate." The abandonment of the first writ was made an issue by the pleadings, the burden resting on the plaintiff. The record contains no evidence of abandonment. It is, however, contended that the abandonment was established by the issuance of the second writ, and the levying of the same upon the identical parcel of land on which the first writ had been levied. The answer to this is that the respondents denied any intention of abandoning the lien secured by the first writ, and avers that they procured the issuance of the second writ as a precautionary measure only. The law does not presume or favor abandonments. The issuance having been made by the pleadings, it was incumbent upon the appellant to establish the fact of abandonment, which he failed to do.

The appellant also contends that, under the levy of the first writ of attachment, no lien was created upon said property, for the reason that the law requires the sheriff, after he has made a levy by attachment, to file in the office of the county recorder a notice describing the property levied upon and attached, duly signed by him; and urges that the notice so filed by the sheriff, under and by virtue of said levy, was not so signed. This question was not raised in the court below, and we cannot, for that reason, consider it here; besides, the appellant is estopped by the allegations of the complaint from now denying that the notice so filed in the recorder's office was not signed by the sheriff, and regular on its face. Appellant, after alleging that said writ was duly issued on November 21, 1890, and duly levied upon said property, further alleges as follows: "And made his return thereon to the court, and also to the recorder of Bingham county; each of the returns so made by the said sheriff is a part of the records of Bingham county

and of this court, and each of said returns and the records made thereunder by the said sheriff appear on the records to be regular on their face, and that said returns and records cast a cloud on plaintiff's title." This averment is plain and direct, and avers that said return so filed in the office of the county recorder is regular on its face. Parties will not be permitted to urge points in this court which were not raised in the court below, especially when such contentions or points are flatly contradicted by the averments of the pleadings of such party. If a mistake had been made in the pleadings, they should have been amended in the court below. Parties will not be permitted to contradict their sworn pleading in that manner. This disposes of the first specification of error as applied to the first writ.

As applied to the second writ, the record shows that the appellant, at the time of the levy of said writ, was residing upon said premises with his family, and had, prior to such levy, executed and filed his declaration of homestead, as provided by sections 3071 and 3072 of the Revised Statutes of Idaho, claiming said premises as a homestead. Said premises were exempt from attachment and execution, after filing said declaration of homestead. (Rev. Stats., sec. 3038.) The respondents acquired no lien upon said premises by reason of the levy under said second writ. (Rev. Stats., sec. 3039.)

The third and fourth specifications of error will be considered together, and are as follows: "3. The court erred in failing to find that said property was exempt from execution and attachment, and was not subject to the debt sued on by Westheimer & Sons against the plaintiff. 4. The court erred in failing to hold that the property in dispute in this action was exempt from seizure, levy and sale under execution and attachment, because of the fact that plaintiff procured the money to purchase this property from the sale of property on which he had a valid homestead exemption under the laws of the state of Idaho." The contention is that, as the property attached had been purchased with the proceeds of the sale of the homestead of appellant, and that as appellant purchased said property as a home for himself and family, and filed his homestead declaration therefor as soon as he had established his residence

thereon, the same is exempt under the homestead laws. The question for consideration then is, Under the homestead laws of the state of Idaho, can a person sell his homestead, which is exempt from execution and forced sale, and purchase another home with the proceeds thereof, and hold the same, exempt from execution and attachment, without filing in the proper county recorder's office the declaration of homestead required by section 3071 of the Revised Statutes of Idaho? The evidence contained in the record establishes the following facts: That the appellant, with his family, consisting of a wife and eight small children, was residing in the town of Blackfoot, Bingham county; that he was the owner of the home in which he was then residing; that he had filed in the proper recorder's office his declaration of homestead, claiming the said property as a homestead, and that the same was exempt from execution and forced sale; that, being indebted to divers persons, he concluded to sell said homestead, purchase another of less value, and pay certain of his creditors with the surplus. He thereupon sold his homestead, paid part of his debts, and invested $1,000 of the proceeds of the sale of said homestead in the lots and premises in question, for the purpose of making a home for himself and family. He removed his family thereon about December 3 or 4, 1890, and filed his homestead declaration therefor on December 4, 1890. That appellant filed his homestead declaration after the levy of the attachment, on November 21, 1890, and before the levy of the second writ of attachment, December 5, 1890. The second writ of attachment is not a lien upon said homestead, because the homestead declaration was filed prior to the levy of said writ. (Idaho Rev. Stats., sec. 3039.) The writ of attachment, levied upon said premises on November 21, 1890, is a valid lien thereon, unless the fact of its having been purchased with a part of the proceeds arising from the sale of the former homestead of appellant exempts it from such lien. Section 3070 of the Revised Statutes of Idaho, is as follows: "In order to select a homestead, the husband or the head of the family, or, in case the husband has not made such selection, the wife must execute and acknowledge, in the same manner as conveyance of real estate is acknowledged, a declaration of

homestead, and file the same for record." Section 3071 provides what such declaration must contain. Section 3072 provides that such declaration must be recorded in the office of the recorder of the county in which the land is situated. Section 3073 provides that, after the filing of the declaration for record, the premises therein described constitute a homestead. Section 3038 provides that the homestead is exempt from execution and forced sale, except as provided in title 7 of the Revised Statutes. Section 3039 provides that the homestead is subject to execution or forced sale in satisfaction of judgments obtained for certain debts and encumbrances, and, among others, in an action in which an attachment was levied upon the premises, before the filing of the declaration of homestead. This provision applies to the case at bar, unless it is excepted for the reason of its having been purchased with the proceeds of the former homestead. The writ of attachment was levied November 21, 1890; the homestead declaration was filed December 4, 1890. Section 3041 provides that a homestead can be abandoned only by a declaration of abandonment, or a grant or conveyance thereof, executed and acknowledged by the husband and wife, if the claimant is married, and by the claimant, if unmarried. From the above provisions it will be observed that to select a homestead in this state, under the homestead law, certain things must be done and performed before it is a homestead, or is exempt from execution and forced sale, and that after a homestead has been once acquired it can be abandoned only as the statute prescribes. The appellant in this case abandoned his first homestead by selling and conveying it to one C. S. Smith. There is no provision in the statutes of Idaho exempting the money for which a homestead may be sold from execution or attachment until it may be invested in another homestead, except in cases of involuntary sales, which provision is not applicable to this case. Our statutes are silent upon the question under consideration. They contain no provisions for an exchange of one homestead for another, nor the purchase of another with the proceeds of the sale of the one exempt, nor for the exemption of the new homestead so purchased.

It is contended that the homestead and exemption statutes should be liberally construed. We concede this proposition. Section 4 of the Revised Statutes declares, among other things: "The statutes of this state, and all proceedings under them, must be liberally construed, with a view to effect their objects and to promote justice." Aside from this provision, we can hardly conceive the necessity or propriety of strictly construing a statute of mercy or benevolence. But, as our statutes are silent upon the question under consideration, this court will not undertake to supply omissions made by the law-making power. This court must distinguish between enacting laws and construing them. Through motives of humanity toward the debtor and his family, exemption and homestead laws have been enacted. Prior to their enactment the law was as cruel as Shylock to the unfortunate debtor, and his wife and children had to suffer. It may be truthfully urged that they sometimes assist unprincipled men to consummate the most cruel frauds. However, in the vast majority of cases, their operation is beneficial and humane. They assure to the family a home. "They mitigate the harshness of the cruel, grasping creditor, and give to the unfortunate debtor a place of refuge and a gleam of hope." We are of the opinion that an amendment of our homestead laws, exempting the proceeds from a voluntary sale for a reasonable time, would be in the interest of humanity. For, however much such an amendment may be desired, this court will not assume the power to amend the statutes, and thus usurp the legislative functions of a co-ordinate branch of our state government. The statutes of some of the states permit the exchange of one homestead for another, and the sale of one, and with the proceeds thereof the purchase of another, and hold the latter exempt from attachment and execution; but states having such statutes do not require the making and filing of a homestead declaration as a precedent condition to the procurement of a homestead, and its exemption from attachment and execution. We are of the opinion that, under our statutes, a residence purchased with the proceeds of the sale of a former homestead, which was exempt from attachment and execution, does not for that reason become a homestead, and exempt from attachment and execution

under our homestead laws. The required homestead declaration must be filed in order to secure the benefit of the exemption laws. The judgment of the court below should be affirmed, and the respondents are entitled to judgment against the appellant for their costs on this appeal, and it is so ordered.

Huston and Morgan, JJ., concur.